## Rose, et al. v. Monarch.

(Decided October 22, 1912.)

### Appeal from Daviess Circuit Court.

1. Trial—Continuance.—Where the defendant is a non-resident, and suffering from a permanent disease, and, upon the filing of a physician's affidavit, the case is continued by consent, on account of defendant's inability to attend the trial, and at the succeeding term, is continued by the court for the same reason, and he is ruled to prepare for trial at the next term of court, it is not error to refuse a continuance at that term upon affidavits showing that he is suffering from the same disease, and is unable to attend the trial or give his deposition, in the absence of a showing in the affidavits of a reasonable probability of his recovery, and of his being able either to attend trial or give his deposition within a reasonable time.

2. Witnesses—Husband and Wife—Section 606, Civil Code.—Under section 606, Civil Code, where the wife does not testify, the husband, in an action which might have been brought by her if she had been unmarried, may testify. If he be the agent of his wife, he may also testify to any matter connected with such agency.

3. Evidence—Letter—Genuineness—Prejudicial Error.—To permit the introduction of a letter, where its genuineness is not proved, is not prejudicial error, where the letter has no material bearing upon the real question in issue.

SWEENEY, ELLIS & SWEENEY for appellants.

J. R. HAYS, R. A. MILLER and R. S. TODD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On November 1, 1902, appellee, M. B. Monarch, and appellants, H. E. Rose and Nellie B. Rose, entered into the following agreement:

"This agreement witnesses that Mrs. M. B. Monarch hereby sells to Nellie B. Rose, the goods as per list of even date for three San Miguel Plantation Co.'s Bonds and Two Hundred and Sixty-five 85-100 dollars. Nellie B. and H. E. Rose agree to take said bonds back of Mrs. Monarch at the end of two years from this date at Nine Hundred dollars less fifteen per cent if Mrs. Monarch is dissatisfied with said bonds. Said Nellie B. Rose and H. E. Rose agree also to pay said Mrs. M. B. Monarch at least fifteen per cent per annum on said bonds during said two years computed on nine hundred dollars for the three bonds, said dividends to be paid on August 1st, of each year, and if more than fifteen per cent per annum is paid by said company on their bonds, then Mrs. M. B. Monarch is to receive the same rate of dividends as is paid to the other bondholders."

Alleging that at the end of said two years she became dissatisfied with said bonds and tendered them back to Nellie B. Rose and H. E. Rose and demanded of them that they pay her said sum of $900, appellee brought this action to recover the sum of $900, with interest thereon from November 1, 1904, until paid. In paragraph 2 it was alleged that on May 3, 1909, appellants, Nellie B. Rose and H. E. Rose, conveyed all of the real estate which they owned in Daviess County to Nora Bevier, the mother of Nellie B. Rose; that this conveyance was without consideration, and made for the fraud-

ulent purpose of defeating appellee in the collection of her debt, and that said conveyance was void. In paragraph 3 it was charged that on August 7, 1909, appellants, acting in the name of the said Nora Bevier, sold and conveyed the same property to A. Oberst. That there was then due from A. Oberst to appellants the sum of $312.50. In this paragraph it is also charged that appellants were preparing to leave the State of Kentucky; that they had no property in this State subject to execution, and not enough to satisfy appellee's demand; that they had sold all of their real estate, and were about to sell or convey or otherwise dispose of their personal property with the fraudulent intent to cheat, hinder and delay appellee and their other creditors, and that the collection of appellee's debt would be endangered by the delay necessary to obtain a judgment and return of no property found. The petition, in addition to asking judgment against appellants for $900, with interest from November 1, 1904, asks that the deed from appellants to Nora Bevier be set aside, and prays for a general order of attachment against the property of appellants. An attachment was issued on certain property belonging to appellants, and the property released upon the execution of a forthcoming bond in the sum of $1,200. By answer, the appellants admitted the execution of the writing in question, but denied that the bonds were worthless or that appellee became dissatisfied with them and demanded the cash therefor at the end of two years. The allegations with reference to the fraudulent transactions, as well as the grounds upon which the attachment was sought, were denied. In addition, appellants pleaded that appellee did not tender the bonds and demand the cash therefor until the year 1906; that had she tendered the bonds at the end of two years, appellants could have protected themselves by disposing of the bonds, as they were then good; but that by reason of appellee's failure to surrender said bonds at the expiration of two years, she thereby became the owner and holder thereof; that appellants were thereafter under no obligation to accept or receive the bonds.

A trial before a jury resulted in a verdict and judgment in favor of appellees for $746, with interest from November 1, 1904. From that judgment this appeal is prosecuted.

The first ground urged for a reversal is that the court erred in refusing appellants a continuance. It appears that the pleadings were completed at the January term, 1910. At this same term appellee's motion to transfer the action to the common law docket for a trial of the issues of fact before a jury was sustained.

On September 6, 1910, the case was set for trial on September 17, 1910. Thereupon, appellants filed the affidavit of a Chicago physician to the effect that he was in attendance upon H. E. Rose, and that H. E. Rose was not able to attend court, and would not be for the next thirty days; that said Rose was suffering from diabetes mellitus, and that he was physically unable to stand a trip to Owensboro, and if in Owensboro, could not attend or be present at the trial of the action. It appears that the case was continued without obection, as the next order shows that on March 10, 1911, appellee, by her attorney, moved the court to set the action for trial. On March 13, 1911, the affidavit of Dr. Orin Kemper Thomson, another Chicago physician, containing substantially the same facts set out in the affidavit of the other Chicago physician, above referred to, was filed, accompanied by a motion to continue the case. This motion was sustained, and the case continued.

On March 22, 1911, appellants were ruled to prepare the action for trial at the next September term of court. When the September term arrived, the case was assigned for trial on September 12, 1911. When called for trial, appellants filed the affidavits of their attorney, J. J. Sweeney, and their physician, Dr. Orin Kemper Thomson. Mr. Sweeney's affidavit states that appellant, H. E. Rose, is suffering from diabetes mellitus, and is unable to stand a trip to Owensboro, and his condition has been such that since the last February term of court, he could not attend court, or even give his deposition in Chicago; that Nellie B. Rose is the wife of H. E. Rose, and is at home attending her husband, and cannot leave him. The affidavit further states that all the facts of the case are in the personal knowledge of H. E Rose, and if he were present he would testify substantially as alleged in appellants' answer. Dr. Thomson's affidavit states that H. E. Rose was suffering from diabetes mellitus, and was physically unable to stand a trip to Owensboro, and if in Owensboro, could not attend or be present at the trial of the action, and that, in his judgment,

he would not be able to attend court for the next thirty days. Furthermore, that H. E. Rose's condition was such that he could not attend and give his deposition even in Chicago.

Here, then, we have one continuance by consent at the September term, 1910, on account of the illness of H. E. Rose, another continuance granted by the court at the March term, 1911, on account of the same illness, and a motion for a continuance at the September term, 1911, because of the same illness, but a refusal on the part of the court to grant such continuance. If, then, appellants were entitled to a continuance at the September term, 1911, because of the same condition, resulting from the same disease, they, for a like reason, would be entitled to a continuance at the next term, and so on until H. E. Rose died. It appears from the affidavits of the physicians that H. E. Rose is a non-resident, and is suffering from a permanent disease. There is in the affidavit filed at the September term, 1911, no allegation that H. E. Rose would probably recover, or that if the case was continued, he would be able at any time in the future either to attend the trial in Owensboro, or to give his deposition. While courts are, and ought to be, very indulgent in the matter of granting a continuance because of the illness of parties, and their consequent inability to be present at the trial, or to give their depositions, yet, where there has been one continuance by consent on account of sickness, and another continuance by the court for the same sickness, and the parties are ruled to prepare their case and be ready for trial at the next term of court, no continuance should be granted on account of the same sickness of the same party, rendering him unable to attend the trial or give his deposition, unless it be made to appear in the affidavit that there is a reasonable probability of the party's recovery, and of his being able either to attend the trial or give his deposition within a reasonable time. If the rule were otherwise, no party could ever get a trial in a case against one who was suffering from a permanent disease, and whose condition was gradually growing worse; thus placing upon the one that is well, the whole burden of the other's sickness, and jeopardizing his property rights for an unreasonable length of time. Upon the facts of this case, we conclude that the court did not abuse its discretion in refusing a continuance.

Richard Monarch was a competent witness for his wife. She did not testify. The action was one that might have been brought by her if she had been unmarried, and in such a case the code expressly provides that either, but not both, of them may testify. Civil Code, section 606. He was also a competent witness on the ground of agency. The original contract was signed by him for his wife, and there can be no doubt from his testimony that he was attending to the matter for his wife. It appears from his testimony that he delivered the bonds in question to Mr. Slack. The latter testified that on November 1, 1904, he tendered the bonds to appellants and demanded the cash. Whether or not he did tender the bonds at that time was the real issue in the case. If he did tender the bonds and demand the cash, this was sufficient evidence of dissatisfaction with the bonds.

There appears in the record a letter purporting to have been written by appellant, H. E. Rose. It is doubtful if there was sufficient proof of the genuineness of this letter to justify its introduction in evidence. The letter, however, is not important, and throws no particular light upon the real question in issue. For this reason, we conclude that its introduction was not prejudicial to the substantial rights of appellants.

Judgment affirmed.